STATE v. McCALL.

(Filed December 2, 1902.)

1. ARSON—*Evidence—Collateral Facts—Accessories.*

On a prosecution for being accessories before the fact to arson evidence of a prior crime to cover up which the arson was supposed to have been committed, is inadmissable.

2. ARSON—*Evidence—Corroborative Evidence—Accessories.*

In an indictment against accessories before the fact, the principal having testified to the facts of the crime, evidence that the principal confessed the crime is admissible as substantive evidence against him, but is only corroborative evidence as to the guilt of the accessories.

INDICTMENT against Alexander and Samuel McCall, heard by Judge *W. B. Council* and a jury, at April Term, 1902, of the Superior Court of BURKE County. From a verdict of guilty and judgment thereon, the defendants appealed.

*Robert D. Gilmer, Attorney-General,* and *J. T. Perkins,* for the State.

*Locke Craig, R. S. McCall,* and *J. L. C. Bird,* for the defendants.

FURCHES, C. J.   The defendants are indicted for burning Concord Methodist Church. The offense is alleged to have been committed in McDowell County by Jack Keaton, as principal, and the defendants, Alexander McCall and Samuel McCall, as accessories before the fact. The defendant Keaton plead guilty, and the McCalls plead not guilty, and the case was moved to Burke County for trial. Samuel is the son of Alexander McCall, and it was shown that some time before the church was burned, a mill belonging to Rom. Brown had been burned, and Alexander McCall was charged with burning the mill, and had been arrested on that charge

before the church was burned.   And it was admitted by the State on the trial that he had been tried and acquitted of burning the mill.

The theory of the State was that Keaton burned the church, but was induced to do so by the defendants, the McCalls, to allay suspicions against Alexander McCall as to his being the party who burned the mill.   And for the purpose of establishing the truth of this theory, the State introduced Keaton as a witness.   On his examination, he was interrogated by the State as follows: "Was Alexander McCall arrested for burning the mill, when the church was burned?" to which he answered "Yes."   "Where were you the night the mill was said to have been burned, where did you stay that night?" "I stayed at Alexander McCall's."   "Where was Alexander the forepart of that night; was he at home or not?"   "No, he was not at home."   "Did you see him when he came in?" "No, I did not see him when he came in."   "Saw him next morning?"   "Yes."   "You noticed his clothing next morning?"   "Yes."   "What was their condition?"   "His clothing was wet, lying on a chair by his bed."   "Do you know what Alexander McCall carried his matches in—do you happen to know that, on the night the mill was burned?"   "Yes." "What did he say about Alexander McCall having matches?" "He had them in a match safe that belonged to his daddy." "Did he tell you what he used to set the mill on fire?"   "He said he used oil."   "Did he tell you how he carried the oil?" "In a bottle."

The above questions and answers were allowed by the Court over the objection of the defendants, and they excepted.

The State also introduced M. L. Kaylor, who testified that he said to Keaton on the day of the preliminary examination, "Young man, you've got yourself into a pretty bad box."   He just touched my arm and turned me around and said, "The

McCalls had this thing done to cover up the burning of the mill." He said, "If I am put on the stand, I will tell the truth about it."

Another witness by the name of Perry was put on the stand by the State, and testified, in answer to a question asked by the State, that Keaton said, "He had burned the church, and that he was hired to burn the church by Alexander McCall and Samuel McCall, one or together." The evidence was admitted by the Court over the objection of the defendants, and they excepted.

The defendants were not on trial for burning Brown's mill, and any evidence as to that, not necessarily connected with the burning of the church, was incompetent and should not have been allowed. And the evidence of Keaton, as to the absence of the defendant Alexander McCall the night the mill was burnt, as to his wet clothing the next morning, **as to** the use of matches and the box he carried them in, and the use of oil carried in a bottle, was incompetent and should not have been allowed. *State v. Graham,* 121 N. C., 623; *State v. Shuford,* 69 N. C., 486; *State v. Frazier,* 118 N. C., 1257; *State v. Jeffries,* 117 N. C., 727; *State v. Alston,* 94 N. C., 930.

The mill was burned some time before the church was burned, and before Keaton said the defendants induced him to burn the church; and the statements he made as to the absence from home of Alexander McCall, his wet clothing, the matches and oil, have no connection with burning the church, nor with the conversation he detailed as to their inducing him to burn the church. It was not necessary to support the State's theory, as Alexander had already been charged with burning the mill, and had been arrested on that charge before it was alleged that the McCalls induced Keaton to burn the church, according to his own testimony.

The evidence of Kaylor and Perry is of the same character,

and is treated together, and was competent, although Keaton had submitted and was not on trial. But as to the defendants, the McCalls, his guilt was still involved, and was an issue in the trial, for the reason that he was charged as principal and the McCalls as accessories before the fact of burning the church; and if he was not guilty, the McCalls could not be guilty. It became, in this way, necessary for the jury to pass upon the guilt of Keaton, and, this being so, the evidence of Kaylor and Perry was substantive evidence as to Keaton's guilt, but was only corroborative evidence as to the guilt of the McCalls. It could only be used for the purpose of corroborating the evidence of Keaton given on the trial of the case, and the jury was the judge of that—whether it did or not, and to what extent, if at all. But it seems to have been treated as substantive evidence by the Court in its charge to the jury, whereas, it was the duty of the Court to have instructed the jury as to its character, and to have explained to them in what respect it was substantive evidence, and in what respect it could only be considered as corroborating Keaton, if they should find that it did corroborate him. And then it could not be used as establishing the truth of the statements made by Keaton, but only for the purpose of giving credit to his testimony. *State v. Parrish,* 79 N. C., 610.

These errors, we think, were calculated to seriously prejudice the defendants on the trial, and entitles them to a new trial.

New Trial.