STATE v. JOHN COLSON.

(Filed 23 February, 1927.)

1. **Evidence—Witnesses—Character—Criminal Law—Instructions — Appeal and Error.**

Upon a trial for violating the prohibition law, the defendant does not place his own character in evidence as to the particular offense charged against him merely by taking the witness stand, and a charge of the court that a bad reputation of this kind if so found by the jury could be considered as corroborative evidence of the State's witnesses, is reversible error to the defendant's prejudice.

**2. Same—Qualification—Cross-Examination.**

> Before evidence as to the character or general reputation of a party is admissible, the witness should first testify as to his knowledge; and if upon direct examination he testifies in the affirmative, the following questions should be directed to general character, permitting the witness to specify; and on cross-examination questions as to particular matters may be asked and the answer of the witness is not subject to contradiction.

APPEAL by defendant from *Nunn, J.,* at November Term, 1926, of PERQUIMANS.

Criminal prosecution, tried upon indictment charging the defendant with purchasing, selling, and transporting intoxicating liquors, etc., in violation of law.

The principal evidence offered by the State was the testimony of one J. H. Metts, a detective, who operated under the name of J. J. Bell. He testified that in April, 1926, he went to the home of the defendant and, by falsely representing his business, purchased a gallon of whiskey from him in the presence of the defendant's wife and small son, Bruce. The witness further testified that on the following day he returned to the home of the defendant and bought four quarts of liquor from the defendant's wife and son, the defendant himself not being present at this time. These purchases were deposited with J. W. Darden, a justice of the peace, and request made that a warrant be issued for the defendant.

The evidence of the State's witness was denied in all its essential features by the defendant, his wife and their son.

In rebuttal, and over objection, the State offered evidence tending to show that the defendant's general reputation was bad "for dealing in liquor."

With respect to this evidence, the following excerpt, taken from the court's charge, forms the basis of one of the defendant's exceptive assignments of error:

"The court instructs you that you should not convict the defendant on his reputation for selling liquor, if you should find from the evidence that he has such a general reputation, but evidence of the defendant's general reputation is competent to be considered by you in this case, as he has testified in his own behalf, and evidence of his general reputation for selling liquor, or violating the prohibition law, is competent as a circumstance tending to corroborate the testimony of Mr. Metts that he found intoxicating liquor at the home of the defendant, and purchased liquor from the defendant. The evidence of defendant's reputation for selling or possessing or transporting liquor is allowed to go to you for the purpose of corroborating Metts, and the whiskey which has been offered

in evidence is admitted for the purpose of corroborating Mr. Metts and Judge Darden, if you find it corroborates them, and such evidence is admitted for the purpose of corroboration only, and not as substantive evidence."

From an adverse verdict and judgment of twelve months on the roads, the defendant appeals, assigning errors.

*Attorney-General Brummitt and Assistant Attorney-General Nash for the State.*

*Aydlett & Simpson for defendant.*

STACY, C. J., after stating the case: The court's instruction that the evidence tending to impeach the general reputation and character of the defendant was to be considered by the jury as corroborative of the testimony of the State's witness, J. H. Metts, and only as such, is not in accord with precedent. It is contended, however, that a new trial should not be awarded for this deviation from the usual formula, because, it is said, to assail the credibility of the defendant's testimony, by showing him to be a man of bad character, is, in effect, but to strengthen or to corroborate the testimony of the State's witness. We are unable to take this view of the matter. Suppose the jury were inclined to disbelieve the defendant's testimony, because of the evidence tending to impeach his general reputation and character, but were not willing to accept the evidence of the State's witness without corroboration—a position not at all improbable—would not a verdict of acquittal be the result, the State not having established the guilt of the defendant beyond a reasonable doubt? To ask this question suggests an answer in the affirmative. We cannot say the error was harmless; its natural effect would seem to be otherwise.

In all criminal prosecutions, certainly those involving moral turpitude, the defendant may elect to put his character in issue, and thus produce evidence of his good reputation and standing in the community (*S. v. Hice,* 117 N. C., 782); but if this be not done, the State cannot offer evidence of his bad character, unless and until he has been examined as a witness in his own behalf, and even then—the defendant not electing to put his character in issue—the impeaching testimony is permitted to affect only his credibility as a witness, and not the question of his guilt or innocence. *Marcom v. Adams,* 122 N. C., 222; *S. v. Traylor,* 121 N. C., 674. Of course, in proper instances, in criminal cases, where the defendant chooses to put his character in issue, the pertinent evidence, pro and con, then becomes substantive proof, and may be considered by the jury as such. *S. v. Morse,* 171 N. C., 777; *S. v. Cloninger,* 149 N. C., 567; *In re McKay,* 183 N. C., 226.

Here, the defendant offered no evidence of his good character, though he did testify in his own behalf. Evidence of his bad character, therefore, was competent only for the purpose of impeaching the credibility of his testimony. *S. v. Cloninger,* 149 N. C., 571; *S. v. Atwood,* 176 N. C., 704; *S. v. Moore,* 185 N. C., 637; *S. v. Love,* 189 N. C., 766.

There are other exceptions directed to the admission of evidence tending to impeach the general reputation and character of the defendant on the ground that the witnesses had failed to qualify as competent witnesses before testifying on the subject, but as these exceptions are not likely to be taken on another hearing, we shall not pass upon them now.

The rule is that where an impeaching or sustaining character witness is called, he must first qualify himself by saying whether he knows the general reputation or character of the witness or party about which he proposes to testify. If he answer that he does not, he should be stood aside without being cross-examined on the subject. And if he reply in the affirmative, he should be confined to general reputation or character. *S. v. Parks,* 25 N. C., 296.

Speaking to the question in *Edwards v. Price,* 162 N. C., 244, *Clark, C. J.,* delivering the opinion of the Court, said: "The rule as to this matter has been fully settled by many decisions in this Court. It is this: The party himself, when he goes upon the witness stand, can be asked questions as to particular acts, impeaching his character, but as to other witnesses it is only competent to ask the witness if he 'knows the general character of the party.' If he answers 'No,' he must be stood aside. If he answers 'Yes,' then the witness can, of his own accord, qualify his testimony as to what extent the character of the party attacked is good or bad. The other side, on cross-examination, can ask as to the general character of the party for particular vices or virtues. But it is not permissible either to show distinct acts of a collateral nature nor a general reputation for having committed such specified act. McKelway Ev., secs. 123, 125; 1 Gr. Ev., sec. 461-b. To permit this would protract trials to an indefinite extent by permitting the investigation of numerous incidents, if not indeed the whole life of the party, and would distract the attention of the jury from the real points at issue in the case and turn the trial into an investigation of the character of the party. It is important to confine the rule strictly as above stated, both to concentrate the attention of the jury upon the matters in issue and to avoid unnecessary length of trials." See, also, *S. v. Mills,* 184 N. C., 695; *S. v. Haywood,* 182 N. C., 815; *S. v. Killian,* 173 N. C., 796; *Tillotson v. Currin,* 176 N. C., 484; *S. v. Robertson,* 166 N. C., 356; *S. v. Holly,* 155 N. C., 485; *S. v. Ussery,* 118 N. C., 1177; *S. v. Coley,* 114 N. C., 879, and *S. v. Gee,* 92 N. C., 760.

For the error, as indicated, in misdirecting the jury as to how they should consider the evidence tending to impeach the general reputation and character of the defendant, a new trial must be awarded; and it is so ordered.

New trial.