### STATE v. JACK FOWLER.

(Filed 25 May, 1949.)

**1. Criminal Law § 29b—**

> As a general rule, testimony of defendant's guilt of a prior crime which is separate and distinct from the crime charged, is incompetent as substantive proof.

**2. Same—**

> As an exception to the general rule, testimony of defendant's guilt of a crime separate and distinct from the crime charged is competent when the offenses are similar and such other crime is so connected with the offense charged that it tends to show *quo animo*, intent, design, guilty knowledge or *scienter*, or to make out the *res gestæ*, or establish a chain of circumstances relevant to the offense charged.

**3. Criminal Law § 33—**

> While defendant is entitled to have his confession admitted in its entirety, including any explanatory or exculpatory statements contained therein, where defendant at the time of confessing to the crime charged also confesses to another and distinct offense, and the part pertaining to the crime charged can be separated from the part relating to such other offense without distorting or twisting the relevant part, only the part of the confession material to the inquiry should be received in evidence. In this case testimony of the extraneous confession was elicited over objection upon direct and independent question by the solicitor after the confession in chief had been admitted in evidence.

**4. Criminal Law § 29b—**

Defendant was charged with murder. *Held:* Testimony of defendant's confession that he was a fugitive from a life sentence for a prior murder, entirely separate and unconnected with the offense charged, is incompetent, and its admission constitutes prejudicial error.

**5. Same—**

There was no evidence that deceased knew defendant's prior criminal record or had it in mind when she threatened to call the sheriff shortly before defendant killed her, but to the contrary the evidence supported the inference that deceased threatened to "call the law" because of present difficulty with defendant. *Held:* The inference that defendant killed deceased to prevent her from disclosing his past, rests upon mere surmise, and evidence of defendant's guilt of a prior murder and that at the time he was a fugitive from a life sentence therefor, is not competent to show motive for the offense charged.

**6. Criminal Law § 51—**

The competency of evidence is for the court, not the jury.

**7. Criminal Law § 40d—**

Where defendant offers no evidence and does not put his character in issue, testimony of a State's witness of defendant's confession of a prior offense, separate and distinct from the offense charged, violates the rule which forbids the State initially to attack the character of the accused and also the rule that bad character may not be proved by particular acts.

APPEAL by defendant from *Bobbitt, J.,* at January Term, 1949, of MOORE.

Criminal prosecution on indictment charging the defendant with the murder of one Mamie J. Wilkerson.

The record discloses that Mamie J. Wilkerson, a widow, and her four small children lived in a two-room house near the village of Vass in Moore County. The defendant lived alone in a house about "25 good steps away." Both houses were close to the home of Ed McKeithan.

On the night of 8 November, 1947, "somewhere after nine" the defendant was at the home of Ed McKeithan and said to him: "Had a little fight tonight . . . after everything got settled down I am going across the branch tonight. . . . If I don't be here tonight you can have what I leave in my house."

The defendant went to the home of Mamie J. Wilkerson about eleven o'clock. She was in the front room with her two small boys who were in bed. Her two daughters, eleven and thirteen years of age, were sleeping in the kitchen. The defendant had been in the house only a few minutes when he went into the kitchen, got an axe, returned to the room where Mamie Wilkerson was sitting in a chair, and proceeded to knock her in the head with the axe, causing her death.

The defendant had known the deceased for a year or two. He had been in her house on numerous occasions "in the day time and night time." He had carried her to Vass on the day of the homicide to buy groceries.

Annie Ruth Wilkerson, 13-year-old daughter of the deceased, was asked what was said between her mother and the defendant prior to the slaying. She answered: "Mama asked him where he was going and he wouldn't say nothing and mama said she was going after the sheriff and he didn't say nothing; he went in the kitchen and got the axe and hit her on the head three times with it. . . ."

Cross-examination: "Q. Now you testified that you heard your mother say she was going to get the law—where was she when she said that?

"A. She was in the front room where the bed was. Yes, sir. I could hear her say that from the room where I was sleeping.

"Q. Was it after she said that that he came into the kitchen and got the axe or before that?

"A. It was before that."

The defendant immediately left in his car, and was not apprehended until four or five months later when the sheriff was notified that he was being held by the Durham police.

While transporting the prisoner from Durham to Carthage, he confessed to the sheriff that he had killed Mamie J. Wilkerson.

The solicitor: "Q. State whether the defendant at that time, or in talking with you thereafter, told you anything about where he came from and whether he had been in any other trouble?" Objection; overruled; exception. "Ans. He stated, to my inquiry, that he was serving a life sentence at the South Carolina Penitentiary for the murder of a colored man down there." Motion to strike; denied; exception. "He said he had been an escapee about three years from that Penitentiary." Objection; motion to strike; denied; exception.

The defendant offered no testimony.

Verdict: Guilty of murder in the first degree.

Judgment: Death by asphyxiation.

The defendant appeals, assigning errors.

*Attorney-General McMullan and Assistant Attorney-General Moody, and Forrest Shuford, II, Member of Staff, for the State.*

*W. D. Sabiston, Jr., for defendant.*

STACY, C. J. The question for decision is whether the defendant's statement to the sheriff that he had killed a man in South Carolina and was an escaped convict from that State was properly admitted in evidence against him on the present prosecution. The answer is to be evolved from the record.

We start with the general rule that evidence of one offense is inadmissible to prove another and independent crime, the two being wholly disconnected and in no way related to each other. *S. v. Choate,* 228 N.C. 491, 46 S.E. 2d 476; *S. v. Harris,* 223 N.C. 697, 28 S.E. 2d 232; *S. v. Smith,* 204 N.C. 638, 169 S.E. 230; *S. v. Deadmon,* 195 N.C. 705, 143 S.E. 514; *S. v. Dail,* 191 N.C. 231, 131 S.E. 573; *S. v. Miller,* 189 N.C. 695, 128 S.E. 1; *S. v. Graham,* 121 N.C. 623, 28 S.E. 537. The reason for the rule is to preserve to the accused, unencumbered by suggestion of other crimes, the common-law presumption of innocence which attaches upon his plea of "not guilty," and to protect him from the disadvantage of extraneous and surprise charges; also to confine the investigation to the offense charged. *S. v. Lyle,* 125 S.C. 406, 118 S.E. 803.

To this general rule, however, there is the exception as well established as the rule itself, that proof of the commission of other like offenses is competent to show the *quo animo,* intent, design, guilty knowledge or *scienter,* or to make out the *res gestæ,* or to exhibit a chain of circumstances in respect of the matter on trial, when such crimes are so connected with the offense charged as to throw light upon one or more of these questions. *S. v. Stancill,* 178 N.C. 683, 100 S.E. 241; *S. v. Beam,* 184 N.C. 730, 115 S.E. 176; *S. v. Choate, supra; S. v. Morris,* 84 N.C. 757; *S. v. Edwards,* 224 N.C. 527, 31 S.E. 2d 516; *S. v. Payne,* 213 N.C. 719, 197 S.E. 573; *S. v. Ferrell,* 205 N.C. 640, 172 S.E. 186; *S. v. Simons,* 178 N.C. 679, 100 S.E. 239; *S. v. Kent,* 5 N.D. 516, 69 N.W. 1052; Wigmore on Evidence (3rd), Vol. 2, Sec. 390; Note to *People v. Molineux,* 168 N.Y. 264, 61 N.E. 286, as reported in 62 L.R.A. 193-357 (q.v.).

It is important to bear in mind the principle upon which the exception rests, for unless the proffered evidence of other offenses legitimately fall within its scope, it should be excluded. *S. v. Adams,* 138 N.C. 688, 50 S.E. 765. And it may be that the line of demarcation which separates the rule from the exception has been blurred or rendered difficult of discernment by reason of its seemingly inconsistent application in some of the cases. *S. v. Edwards,* 224 N.C. 527, 31 S.E. 2d 516; *S. v. Biggs,* 224 N.C. 722, 32 S.E. 2d 352; *S. v. Kelly,* 216 N.C. 627, 6 S.E. 2d 533; *S. v. Flowers,* 211 N.C. 721, 192 S.E. 110. If so, we must try again to plot its course. The statement of the difference is simple enough. Its application is the place of the pinch or the rub. The exception requires a more relevant base than the mere disposition of the accused to commit such crimes. *S. v. Beam, supra.* The touchstone is logical relevancy as distinguished from certain distraction. "Never run rabbits while pursuing the fox," is a rule of the sportsman, equally worthy of observance in the trial of causes as on the hunt. Good sportsmanship is after the manner of good morals as well as good law.

It is likewise to be borne in mind that the defendant offered no evidence in the case, and did not put his general reputation and character in issue. *S. v. Nance,* 195 N.C. 47, 141 S.E. 468; *S. v. Colson,* 193 N.C. 236, 136 S.E. 730.

In support of the ruling below, it is pointed out that the defendant confessed to both offenses at the same time, *i.e.,* he told the sheriff that he killed Mamie J. Wilkerson and in the same conversation he stated that he was an escaped convict from South Carolina. It is contended, therefore, that the whole of the confession was admissible. *S. v. Edwards,* 211 N.C. 555, 191 S.E. 1; *S. v. Swink,* 19 N.C. 9; Anno. 26 A.L.R. 542; 2 A.L.R. 1030. The general rule is that a confession, like a deposition, *Savings Club v. Bank,* 178 N.C. 403, 100 S.E. 607, should be offered in its entirety. *S. v. Patterson,* 63 N.C. 520. Whether any part of it should be excluded, or admitted under special instructions according to its relevancy, is a matter about which the courts are divided. Anno. 2 A.L.R. 1029; 22 C.J.S. 1439.

In reply to the State's position, the defendant says the record fails to make manifest the unity of the confession, or that the two statements were made or elicited in the same conversation. Moreover, the right of the confessor to have his confession considered as given, in its entirety, with whatever views or theories it affords, *S. v. Jones,* 79 N.C. 630, may not extend to the prosecution, for if the part pertaining to the crime charged can be separated from the part relating to other offenses, only the part material to the inquiry should be received in evidence under the rule. *People v. Loomis,* 178 N.Y. 400, 70 N.E. 919; *People v. Spencer,* 264 Ill. 124, 106 N.E. 219; 20 Am. Jur. 426; 22 C.J.S. 1440. On this point it would seem that the defendant's position is the sounder one. *People v. Rogers,* 192 N.Y. 331, 85 N.E. 135; 15 Ann. Cas. 177. At least, such accords with many of the well-considered cases. Anno. 2 A.L.R. 1029. Then, too, it should be observed that the evidence in respect of the defendant's past criminal record was stated by the sheriff, not in giving the defendant's confession in chief, nor as an integral part thereof, but in response to a direct and independent question by the solicitor. *People v. Loomis, supra.*

By and large, however, the chief reliance of the prosecution is that the proffered testimony comes within the exception to the general rule of exclusion. 22 C.J.S. 1272. It was *inferred* in its admission, under authority of *S. v. Swink, supra,* that the defendant wished to get rid of the deceased for fear she would disclose his past criminal record to the sheriff, thus affording a motive for the crime charged. *S. v. Morris,* 84 N.C. 757. Indeed, the court instructed the jury that "this evidence is for your consideration only as it may bear—it being for you to determine to what extent, if any, it does bear—upon the question of the motive or

intent of the defendant in relation of the alleged killing of Mamie J. Wilkerson."

The difficulty with this *inference* and its submission to the jury is that it rests only in surmise, and the competency of evidence is for the court, not the jury. *S. v. Whitener,* 191 N.C. 659, 132 S.E. 603; *S. v. Dick,* 60 N.C. 440. At any rate, the record is barren of any evidence to connect the offense charged with the defendant's past criminal record. Whether the requisite degree of relevancy exists is a judicial question to be determined in light of the inevitable tendency of such evidence to raise a legally spurious presumption of guilt in the minds of the jurors. *S. v. Lule, supra.* It nowhere appears of record that the deceased knew anything about the defendant's past, or that such was in her mind when she threatened to call the sheriff. The defendant went to the kitchen and got the axe before the deceased made any threat to "get the law." The direct testimony of the little girl, Annie Ruth, was somewhat equivocal on this point, but on cross-examination she was perfectly clear about it. The more reasonable interpretation of the record would seem to be that the two had been quarreling or fighting, according to the testimony of Ed McKeithan, and that this was back of the deceased's threat "to call the law," as one of the witnesses expressed it. The evidence apparently comes squarely within the general rule of exclusion. *S. v. McCall,* 131 N.C. 798, 42 S.E. 894.

We do not have the question, posed in some of the cases, where the confession of the crime charged· is so interwoven with the challenged statement that the two cannot be separated without twisting or distorting the pertinent part. Nor is it essential to consider this question or the authorities bearing thereon. Quite clearly if the challenged statement stood alone, its incompetency would be conceded. It is specious logic to reason from one crime to another, *e.g.,* the defendant committed a similar offense in days agone, *ergo* he committed this one. Obviously a *non sequitur,* and the cases so hold. *S. v. Shuford,* 69 N.C. 486. *Locus penitentiæ* and reformation are also known to the law. Evidence of other crimes, when offered in chief, violates both the rule which forbids the State initially to attack the character of the accused and the rule that bad character may not be proved by particular acts. *S. v. Choate, supra;* Wharton's Crim. Evi., Sec. 344. It is to be remembered that the defendant in the instant case did not go upon the witness stand òr put his character in issue. *S. v. Nance,* 195 N.C. 47, 141 S.E. 468; *S. v. Colson,* 193 N.C. 236, 136 S.E. 730.

The case of *S. v. Kelly,* 216 N.C. 627, 6 S.E. 2d 533, is cited as an authoritative decision in support of the admission of the challenged testimony. We think there are distinguishing differences between the two cases, but if not altogether so in their implications, to the extent that our

present decision clashes with the Kelly decision it must be understood as modified accordingly.

The prejudicial effect of the challenged testimony, if incompetent and erroneously admitted, is not debated or questioned. It undoubtedly forestalled due consideration of any "less degree" of the capital charge. G.S. 15-170.

The learned counsel appointed by the court to represent the prisoner has brought up his appeal to the end that the accused may not suffer death except as the law commands. Both Mr. Sabiston and Assistant Attorney-General Moody have argued the case with their accustomed zeal and earnestness, fortified by manifest research and exhaustive briefs. Nothing has been overlooked on either side.

A death sentence presupposes a trial free from error. The defendant is entitled to another hearing. So ordered.

New trial.