STATE OF NORTH CAROLINA v. HERMAN K. SIMPSON

No. 48

(Filed 12 June 1979)

1. **Criminal Law § 75.8— Miranda warnings before questioning—further warnings not necessary prior to resumption of questioning**

    *Miranda* warnings given to defendant at 9:30 a.m. and 10:10 a.m. prior to an interview of defendant which lasted until 2:45 p.m. were still effective when officers, after reviewing with defendant typewritten notes of the interview, told defendant at 5:15 p.m. that they did not believe what he had told them and again began interviewing him, and a confession made by defendant during the second interview was not inadmissible because defendant was not again given the *Miranda* warnings, where defendant knew that the purpose of all questioning of him was to obtain information about a certain murder, and all conversations were held in the same interview room with the same officers.

2. **Criminal Law § 34— admission of another crime in confession—incompetency on question of guilt**

    In this prosecution for first degree murder, first degree burglary and armed robbery, the trial court committed prejudicial error in the admission of a portion of defendant's confession in which he admitted that he committed sodomy with a dog in a vacant house in the general area in which the crimes charged were committed, since evidence of an independent, unrelated crime is inadmissible to prove defendant's guilt of the crimes charged even when that evidence is contained in defendant's confession to the crimes charged.

3. **Homicide § 15.4— deceased lying down when blow struck—expert opinion testimony**

    A pathologist's opinion testimony that the body of deceased was lying down at the time one of the blows to the head was struck was sufficiently based on facts observed by the witness and facts in evidence before the jury

as to the force of the blows, the location and angle of the blows, the location of blood in the area, and the position of the body.

**4. Burglary and Unlawful Breakings § 3.1; Indictment and Warrant § 17.3 — burglary indictment — wrong house number — no fatal variance**

> There was no fatal variance between indictment and proof in a first degree burglary case because the indictment alleged the number of the victim's residence was 130 and the evidence showed that the number of the residence was 126.

APPEAL by defendant from *Brewer, Judge.* Judgments entered 15 September 1978 in Superior Court, CUMBERLAND County.

Defendant was tried upon indictments, proper in form, charging him with: (1) the first degree murder of Willie A. Kinlaw on 21 March 1976; (2) the first degree burglary of the residence of Willie A. Kinlaw on 21 March 1976; and (3) the armed robbery of Willie A. Kinlaw on 21 March 1976. The jury returned verdicts of (1) guilty of first degree murder, (2) guilty of first degree burglary, and (3) guilty of felonious larceny. The trial judge ruled that the first degree burglary merged with the first degree murder for judgment and imposed one life sentence. Upon the felonious larceny conviction defendant was sentenced to a prison term of ten years to commence at the expiration of the life sentence. Upon defendant's petition we certified the felonious larceny conviction for review by this Court prior to determination in the Court of Appeals.

At trial the State's evidence tended to show the following: On 20 March 1976 Willie A. Kinlaw, age approximately 76, lived alone at 126 Wade Street, Fayetteville, North Carolina. For safety his step-son had caused to be installed steel bars on all of the windows and doors except the front door opening onto the porch facing Wade Street. At about 7:30 p.m. on 20 March 1976 defendant was seen walking down Wade Street in front of the Kinlaw house. At about 8:30 to 9:00 a.m. in the morning of 21 March 1976 defendant was seen walking along Wade Street across the street from a house two houses down from Willie Kinlaw's house. He said he was going home to McDuffie Street. He was carrying a brown bag at the time. He was in the process of walking away from Wade Street.

On 21 March 1976, a Sunday morning, at approximately 10:00 a.m., Willie A. Kinlaw's sister drove to his home to carry him to church. She observed the glass broken in the front door. After ringing the doorbell and receiving no answer she went to Mr. Lee's house next door and Mr. Lee returned with her to investigate. After finding the back door ajar Mr. Lee went into the house and discovered Willie Kinlaw's body in the living room. The cause of death was determined to be penetrating wounds on either side of the head inflicted by a hard object with an "L" or a "V" shaped surface to it. An inventory of Willie Kinlaw's house disclosed that his bedroom had been ransacked and a clock-radio and an old owl head pistol were missing.

Willie Kinlaw's step-daughter took care of his bills for him. About two weeks after Willie Kinlaw's death his step-daughter received his telephone bill which reflected a long distance call at 8:02 a.m., 21 March 1976, from Kinlaw's residence to Philadelphia, Pa. The call lasted for 38 minutes. Realizing that Willie Kinlaw had no relatives or acquaintances in Philadelphia, she relayed this information to the Fayetteville police. Upon investigation by Philadelphia law enforcement officers it was determined that defendant's girl friend lived at the address of the telephone number in Philadelphia which was called from the Kinlaw residence, and that defendant had called that number around 8:00 a.m. on either 20 March 1976 or 21 March 1976. The recipient of the call did not know from where defendant called.

Defendant left Philadelphia for Fayetteville around 15 March 1976 and remained in Fayetteville until about 6 April 1976 at which time he returned to Philadelphia. While in Fayetteville defendant stayed with several other people at 626 McDuffie Street. During the morning of 21 March 1976 defendant went to 626 McDuffie Street with a brown paper bag containing a clock-radio identified as the one taken from Willie Kinlaw's house. While at 626 McDuffie Street defendant tried to sell to one of the other occupants of that address an old owl head pistol. Also while at 626 McDuffie Street defendant had in his overcoat pocket an axe head with a handle broken off to about 12 inches in length.

On 9 April 1976 when the Philadelphia law enforcement officers went to the residence to which the long distance call was made on 21 March 1976 from Willie Kinlaw's house defendant was

present at the Philadelphia address. Defendant stated that while in Fayetteville he heard on television about the Kinlaw murder. On 12 April 1976 the Philadelphia law enforcement officers obtained two statements from defendant. The first was exculpatory but the second was a confession of breaking into Willie Kinlaw's house at about 3:20 a.m. on 21 March 1976, of killing Willie Kinlaw, of calling his girl friend in Philadelphia on Willie Kinlaw's telephone, and of taking a clock-radio, an old owl head pistol, and about $20.00 from Willie Kinlaw's house.

Defendant offered no evidence on trial.

Additional evidence for the State will be discussed in connection with the assignments of error addressed in the opinion that follows.

*Attorney General Edmisten, by Assistant Attorney General Jane Rankin Thompson, for the State.*

*Fred J. Williams and Malcolm (Tye) Hunter, for the defendant.*

BROCK, Justice.

Defendant brings forward seven assignments of error which he presents in four main arguments. They are: (1) that the court erred in failing to suppress the evidence of defendant's inculpatory statement given to the Philadelphia law enforcement officers; (2) that the trial court erred in admission of evidence of a dead dog and the report of the autopsy performed on the dog; (3) that the trial court erred in admitting evidence of the position of the body of the deceased when one of the blows was struck to the head; and (4) that the trial court erred in its refusal to dismiss the charges of first degree burglary and of armed robbery. We will discuss them in the order presented.

Defendant timely filed a motion to suppress the evidence of defendant's inculpatory statement made to the Philadelphia, Pa. police officers. A suppression hearing was held before Judge Godwin in Cumberland County on 19 and 20 June 1978. After a full hearing Judge Godwin found facts and denied the motion. The evidence adduced at the suppression hearing is summarized as follows: At the request of Fayetteville, N.C. officers, two Philadelphia, Pa. officers on 9 April 1976 went to the residence

listed for the telephone number in Philadelphia which had been called from the telephone of the deceased, Willie Kinlaw, in Fayetteville during the morning of 21 March 1976. Upon arrival at that address, 210 West Abbottsford Avenue, the Philadelphia officers talked with Millie Smith, mother of defendant's girl friend, with Mary Melton, defendant's girl friend, and with the defendant himself. At that time defendant was not a suspect in the eyes of the Philadelphia officers, and only a brief conversation was held.

On 12 April 1976 Detective Rosenstein of the Philadelphia police went to 210 West Abbottsford Avenue. After talking with Millie Smith and Mary Melton he determined that defendant was staying at a hotel about a block away. Detective Rosenstein went to the hotel, talked briefly with defendant and asked him to accompany the officer to the Police Administration Building. Detective Rosenstein told defendant that he was investigating a murder which had occurred in Fayetteville, N.C. and would like to talk with defendant to ascertain whether defendant had information concerning the murder. Defendant agreed to talk with the officer and to go to the Police Administration Building. Defendant, as well as Millie Smith and Mary Melton, were transported to the Police Administration Building, arriving there at about 9:15 a.m. on 12 April 1976.

Defendant was taken to an interview room and was left alone until 9:30 a.m. Beginning at 9:30 a.m. defendant was fully advised of his *Miranda* rights. Defendant stated that he understood his rights, that he did not want a lawyer present, and that he would answer questions. At 9:50 a.m. Detective Cook and Detective Parker of the Fayetteville, N.C. police entered the interview room and again advised defendant of his *Miranda* rights. Defendant acknowledged that he understood his rights by initialing each paragraph. He also signed a waiver of right to counsel. This second advising of rights concluded at about 10:10 a.m. at which time defendant was offered something to eat and drink. He refused.

Detective Rosenstein, with Detectives Cook and Parker present, began his interview with defendant at 10:11 a.m., 12 April 1976. The interview continued until 2:45 p.m. except for a short break to permit defendant to use the bathroom and get a drink of

water. At 1:25 p.m. defendant was offered a meal but he refused. At 2:45 p.m. the notes of the interview were sent out to be typed and defendant was taken to the cafeteria for a meal. At 3:35 p.m. Detective Rosenstein began going over the typed statement with defendant. Review of the nine-page, typewritten statement was completed and defendant initialed each page of it at about 5:15 p.m.

The officers told defendant that they did not believe what he had told them and they continued to question defendant until 8:30 p.m. when Detective Dupe of the Fayetteville police entered the room briefly and showed to defendant a North Carolina warrant charging him with murder. Thereafter defendant stated to Detective Rosenstein, "I'll tell you what you want to know. I killed him, but I want to talk to Millie [Smith] first." Millie Smith was brought to the interview room and talked with defendant for about ten minutes, and then the interview resumed. From 9:30 p.m. to 10:45 p.m. defendant made a detailed confession. This second statement was then typed and read to defendant who stated, "To the best of my knowledge it's true and correct." However, defendant refused to sign the second statement.

[1] The foregoing summary of the facts and the findings of fact by Judge Godwin are not disputed by defendant. His argument is that the reading to defendant of his *Miranda* rights and his waiver of rights from 9:30 a.m. to 10:10 a.m. in the morning were not effective for the interrogation which started at 5:15 p.m. and the confession which began at 9:30 p.m. Defendant argues that the interview from 9:30 a.m. until 5:15 p.m. was not custodial and therefore he was not entitled to be advised of his *Miranda* rights; that since he was not legally entitled to be advised of his *Miranda* rights from 9:30 a.m. to 10:10 a.m. he could not legally waive them. He asserts that when the finger of suspicion began to point to him at 5:15 p.m. and the interrogation became custodial, the officers were required at that time to advise him of his *Miranda* rights.

This argument may say something for the ingenuity of counsel but it is far from persuasive. The defendant was accorded every courtesy and every request. He was not intimidated in any way. He clearly understood that the purpose of the interview beginning at 9:30 a.m. was to obtain information concerning the

murder of Willie A. Kinlaw in Fayetteville on 21 March 1976. All conversations were held in the same interview room with the same officers. There was no threat, coercion, hope, or promise of reward. All of the evidence discloses a confession freely, understandingly, and voluntarily given. It is inconceivable to think the defendant's clear understanding and waiver of rights at 9:30 a.m. to 10:10 a.m. had become so diluted and stale by the passage of time that at 5:15 p.m. of the same day he was deprived of any rights. If, as defendant claims, he was not legally entitled at 9:30 a.m. to be advised of his *Miranda* rights, then he was accorded more than that to which he was entitled and is in no position to complain. This argument and assignment of error are without merit and are overruled.

[2]  During the course of giving the inculpatory statement beginning at about 9:30 p.m. Detective Rosenstein questioned defendant intently to verify the things defendant was saying. To account for the instrument with which Willie A. Kinlaw was killed defendant stated that he used a "wood and metal thing" which he later threw in the Cape Fear River. To account for the stolen radio he stated that he gave it to his girl friend at 626 McDuffie Street in Fayetteville. To account for the stolen pistol he confessed to the murder of a patient in a rest home in Fayetteville where he fired the pistol at someone who saw him. (The evidence of this murder was not offered in the trial of the present case.) Also during this period defendant stated to Detective Rosenstein: "If you don't believe me about what I'm saying you can have somebody go to a vacant house on _____ Street that leads off McDuffie Street and you will find a dead dog there that I f----- [had sexual intercourse with]."

In asserting the reliability of defendant's inculpatory statement the district attorney, at trial, offered evidence of the glass in the front door of the Kinlaw residence being broken as described by defendant, of the bar being removed from the back door as described by defendant, of the stolen radio being at 626 McDuffie Street as described by defendant, of the stolen pistol being seen at 626 McDuffie Street in defendant's possession, and of finding the dead dog in the vacant house as described by defendant. It is to allowing the evidence concerning the dead dog to which defendant timely objected at trial and assigns as error on this appeal.

When defendant confessed to the crimes charged against him in the indictments in this case, he also confessed to another murder involving a patient in a rest home in Fayetteville as well as to sodomy with a dog on some unknown street leading off McDuffie Street where his girl friend lived. The State did not offer that portion of his confession which related to the other murder for the reason, apparently, that generally speaking proof that a defendant has committed an independent, unrelated crime is not admissible to prove defendant's guilt of the crime for which he is being tried. *State v. McClain*, 240 N.C. 171, 81 S.E. 2d 364 (1954). Evidence of an independent, unrelated crime is inadmissible under this rule even when that evidence consists of defendant's confession to the unrelated crime made as a part of his confession to the crime for which he is being charged. *State v. Fowler*, 230 N.C. 470, 53 S.E. 2d 853 (1949). Portions of a confession which are irrelevant to the issue of defendant's guilt of the crime and which would tend to prejudice defendant at trial should not be admitted over defendant's objections and, on proper motion, should be stricken. *State v. Lynch*, 279 N.C. 1, 18, 181 S.E. 2d 561, 572 (1971).

In *State v. Fowler, supra*, defendant was on trial for murder. The State offered against him his confession made to the sheriff. Over defendant's objection the State also offered evidence that during this confession defendant stated he was serving a life sentence in South Carolina for murder and had escaped three years before the killing for which he was being tried. This Court held that the admission of that portion of defendant's confession relating to his imprisonment in South Carolina for murder was prejudicial error necessitating a new trial. The Court granted relief on the general rule that:

"evidence of one offense is inadmissible to prove another and independent crime, the two being wholly disconnected and in no way related to each other. The reason for the rule is to preserve to the accused, unencumbered by suggestion of other crimes, the common-law presumption of innocence which attaches upon his plea of 'not guilty,' and to protect him from the disadvantage of extraneous and surprise charges; also to confine the investigation to the offense charged." 230 N.C. at 473, 53 S.E. 2d at 855. (Citations omitted.)

Concluding that it was error to admit this portion of the defendant's confession, the Court noted also, *id.* at 476, 53 S.E. 2d at 857, "The prejudicial effect of the challenged testimony, if incompetent and erroneously admitted, is not debated or questioned."

Those portions of defendant's confession here relating to another murder he had committed and to his having committed sodomy with a dog were irrelevant to the issue of defendant's guilt of the crimes for which he was being tried. The State properly refrained from offering that portion of his confession relating to the other murder. The trial judge, however, improperly permitted the State to offer that portion of defendant's confession relating to the sodomy. There is nothing in the record connecting the sodomy with the crimes for which defendant was being tried. This sodomy, like the other murder, was an independent and unrelated criminal offense, evidence of which should have been excluded under well-established principles of law discussed above.

The instant case illustrates the practical wisdom of the rules which, when properly applied, render evidence of independent, unrelated crimes generally admissible. After the State introduced evidence that defendant had confessed to sodomy with a dog it spent a large part of the trial proving that defendant did, indeed, commit sodomy with a dog. No less than 12 pages of the record, including the testimony of four witnesses, one of whom was a forensic pathologist, are devoted to proving: (1) a dead dog was found at the location described by defendant; (2) the dog was delivered to the office of the Chief Medical Examiner in Chapel Hill, North Carolina, where an autopsy was performed by a forensic pathologist; and (3) the autopsy revealed, among other things, that the "dog's vagina was longer and wider than it should have been for the stage of the estrous cycle that the animal was in." The pathologist testified at great length as to the possible cause of death of the dog, and whether trauma to the vagina of the animal had occurred before or after death.

That defendant might have committed sodomy with a dog was totally irrelevant to the question of his guilt of the murder, burglary, and robbery involving Willie A. Kinlaw, the crimes for which he was on trial. He was faced, however, at trial not only with defending these crimes but defending a charge, not contained in the bill of indictment, that he had committed sodomy

with a dog. We are satisfied this erroneous and prejudicial tactic on the part of the State deprived defendant of a fair trial on the charges contained in the indictments. For this prejudicial error defendant must be awarded a new trial.

[3] By his next assignment of error defendant contends that the State's expert witness, Dr. Lutman, the pathologist who examined the body of Willie A. Kinlaw, did not have sufficient facts upon which to base his opinion that the body of deceased was lying down at the time one of the blows to the head was struck. We do not agree.

Dr. Lutman testified that his examination of the deceased revealed "V" or "L" shaped wounds on either side of the head just behind each ear, penetrating into the bone, and on the right side, completely through the skull. In his opinion a large amount of force was required to have inflicted such wounds, and they were "straight-entering" wounds on each side. The injury in the skin was directly over the injury of the bone. The blows were perpendicular to the bone. Dr. Lutman then stated that he had an opinion as to the position of the body at the time one or more of these blows to the head was inflicted. This opinion was based upon the force of the blows, the location and angle of the blows, the location of blood in the area, and the position of the body.

*State v. Bock*, 288 N.C. 145, 217 S.E. 2d 513 (1975) and *Todd v. Watts*, 269 N.C. 417, 152 S.E. 2d 448 (1967) relied upon by defendant are clearly distinguishable. In both *Bock* and *Todd* the opinion testimony was ruled inadmissible because it was based on facts not within the personal knowledge of the witness and not in evidence before the jury. In the present case, Dr. Lutman testified only from facts observed by him in his examination and from facts in evidence before the jury. Admittedly the district attorney's question is somewhat disjointed but the essential elements are present. This assignment of error is overruled.

By his next assignment of error defendant contends that the trial court should have allowed his motion to dismiss the charge of armed robbery. Defendant presents no reason, argument or authority to support this assignment of error. It is therefore deemed abandoned. App. R. 28(b)(3). Nevertheless defendant was convicted only of felonious larceny and the evidence is clearly ample to support that verdict.

[4]  By his final assignment of error defendant contends that the trial court should have allowed his motion to dismiss the first degree burglary charge. Defendant argues that there was a fatal variance between the indictment and the evidence because the indictment alleged that the residence of Willie A. Kinlaw was number 130 and the evidence established that the residence was number 126.

The indictment in this case charges:

"that on or about the 21st day of March 1976, in Cumberland County, Herman K. Simpson unlawfully and wilfully did feloniously during the nighttime between the hours of 12:00 midnight and 4:00 a.m. break and enter a building occupied by Willie Alexander Kinlaw, used as a dwelling house and located at 130 Wayde Street, Fayetteville, North Carolina. This dwelling house at the time of the breaking and entering was actually occupied by Willie Alexander Kinlaw. The defendant broke and entered with the intent to commit a felony therein . . . ."

There was no controversy as to the location of the residence of Willie A. Kinlaw. The description of the house in this case was adequate to bring the indictment within the language of the statute. The house was also identified with sufficient particularity to enable the defendant to prepare his defense and to plead his conviction or acquittal as a bar to further prosecution for the same offense. This inconsequential error in the street address appearing in the indictment does not render the indictment fatally defective. *State v. Davis*, 282 N.C. 107, 191 S.E. 2d 664 (1972).

Because of the error in admitting evidence of the defendant's commission of the unrelated crime of sodomy defendant is awarded a

New trial.