STATE OF NORTH CAROLINA v. JERRY DALE CASHWELL

No. 605A86

(Filed 30 June 1988)

Criminal Law § 34.1— trial on murder charges—defendant in jail on another charge—irrelevancy

> In a prosecution for two first degree murders, the trial court erred in permitting an inmate who was in jail with defendant and who testified as to inculpatory statements made by defendant to testify that defendant had told him that he was in jail for the attempted murder of his girlfriend and in permitting a detective to testify that defendant was in jail for assaulting his girlfriend with a deadly weapon with intent to kill, since this testimony was not necessary to show the full context of defendant's inculpatory statements or to show any confidential relationship between defendant and his fellow inmate, and the testimony was not relevant to any fact in issue concerning the murder charges other than the character of the accused. N.C.G.S. § 1A-1, Rules 401, 402 and 404.

APPEAL by defendant from judgments of consecutive terms of life imprisonment for two convictions of murder in the first degree imposed by *Brewer, J.,* at the 14 April 1986 session of Superior Court, CUMBERLAND County. Heard in the Supreme Court 14 April 1988.

*Lacy H. Thornburg, Attorney General, by James J. Coman, Senior Deputy Attorney General, and William N. Farrell, Jr., Special Deputy Attorney General, for the state.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Louis D. Bilionis, Assistant Appellate Defender, for defendant.*

MARTIN, Justice.

Defendant was convicted upon two charges of murder in the first degree and, upon the jury's recommendation, was sentenced to two consecutive life sentences on 29 May 1986. Defendant presents six issues to this Court upon appeal. We conclude that defendant is entitled to a new trial for errors in the admission of evidence and, therefore, find it unnecessary to discuss the remaining issues as they are not likely to reoccur upon retrial.

In summary, the evidence shows that defendant, Lee Wayne Hunt, Kenneth Wayne West, and Gene Williford, Jr. were engaged in narcotics trafficking in Cumberland County. Roland

"Tadpole" Matthews apparently had stolen marijuana from Hunt and Hunt expressed an intention to teach Tadpole a lesson. Williford testified under a grant of immunity that on the morning of 6 March 1984 he, Hunt, West, and defendant met together to discuss the fate of Tadpole. Defendant's assignment was to go to Tadpole's place of work, wait for him, and accompany Tadpole to his home that evening. Defendant did so. Later that night Williford, with Hunt and West, drove out toward Tadpole's residence. Hunt had a 9 millimeter pistol, and West had a .38- or .357-caliber pistol and a hunting knife. On River Road, Williford let Hunt and West out. When Williford returned around thirty minutes later, Hunt, West, and defendant were running up the road to catch him. The three got into the car — West was carrying a green trash bag — and they proceeded back to the Hunt residence. All got out there, but Williford did not go inside. The green trash bag contained marijuana. Shortly afterwards, Hunt, West, and defendant left the residence wearing different clothes and carrying two green trash bags. They stated that they were going to "stash the pot" and "get rid of the clothes." Williford was told to go home and drive carefully.

On 7 March 1984, Tadpole and his wife, Lisa, were found shot and stabbed to death in their rural Cumberland County home. Their infant daughter was found unharmed in the front bedroom of the house. It was determined by the autopsy that Tadpole Matthews died as a result of being shot and stabbed. He was shot twice and stabbed several times. Lisa Matthews also died as a result of being shot and stabbed. All of the bullets that were recovered were determined to have been fired from the same gun, a .38-caliber pistol.

Samuel Thompson, an inmate in the Cumberland County Jail, testified that on 29 May 1985 he met defendant, who was also in jail. The two were in the same cell block. At that time defendant made certain statements to Thompson as to why he was in custody, and sometime during late June or early July, defendant made incriminating statements to Thompson concerning the Matthews murders. Thompson stated that defendant told him that when Hunt and West showed up at the Matthews house, defendant let them into the house. Hunt gave defendant a gun and defendant shot Matthews twice in the head, and Hunt then shot Lisa. Thereafter defendant and West stabbed and cut Lisa and Tadpole Mat-

thews. Defendant was not arrested until some fourteen months later.

Defendant contends that the trial judge erred in allowing the witness Samuel Thompson to testify, over the objection of defendant, that defendant told Thompson that he was in jail for the attempted murder of his girlfriend, Sherry. Defendant further argues that this error was compounded when the state was allowed to introduce evidence on cross-examination of defendant's witness Detective Watts which corroborated Thompson's testimony concerning this statement by defendant. The challenged portions of the testimony follow:

[Direct examination of Samuel Thompson.]

Q   And when did you first have occasion to know the Defendant, Jerry Cashwell?

A   It was—ah—I had met Jerry Cashwell on May the 29th, and—ah—I was out of cigarettes and I asked Mr. Cashwell if he wanted to buy my supper tray for a pack of cigarettes. He said he would and that's how I first became acquainted with Mr. Jerry Cashwell.

Q   And during that period of time, did you and he become friendly while you were in F Block?

A   Yes, we did.

Q   And during that period of time, did you have any discussions with the Defendant as to why you were incarcerated?

A   Yes, sir. I did. I told Mr. Cashwell that I was arrested for armed robbery and—ah—Jerry told me that—ah—he was in jail for attempted murder on his girl friend, Sherry.

[Cross-examination of Detective Jack Watts, Jr.]

Q   And did he [Thompson] tell you what the Defendant, Cashwell, told him that he was in jail for?

. . . .

THE WITNESS: Mr. Thompson stated to me that Mr. Cashwell originally stated to him that he was in jail for assault with a deadly weapon with intent to kill against his girl friend, Sherry Keesler.

Q  Did you have occasion to verify whether or not the De-
fendant was in fact in jail on a similar-type charge?

MS. TALLY: Objection.

COURT: Overruled.

THE WITNESS: Yes, sir. I verified that.

MS. TALLY: Move to strike.

COURT: Denied.

MR. COMAN: What was the actual charge that you
verified at the time that you checked behind what Mr.
Thompson had told you?

MS. TALLY: Objection.

COURT: Overruled.

THE WITNESS: The best I recall, it was assault with
a deadly weapon with intent to kill. In fact, that case was
worked by our office by Detective Bittle.

MS. TALLY: Move to strike.

COURT: Denied.

The state argues that Thompson's testimony and the corrobo-
rating testimony of Detective Watts were competent for the
purpose of showing the relationship between Thompson and de-
fendant that led up to defendant's inculpatory statements a
month later. Defendant argues, and we agree, that this testimony
constituted prejudicial error.

Rule 401 of the North Carolina Rules of Evidence defines rel-
evant evidence to be "evidence having any tendency to make the
existence of any fact that is of consequence to the determination
of the action more probable or less probable than it would be
without the evidence." Under this definition of relevant evidence,
the testimony of these two witnesses that Cashwell was in jail on
a charge of attempted murder of his girlfriend is not relevant.
This statement by the defendant does not go to prove the exist-
ence of any fact that is of consequence in the determination of the
two charges of murder on which defendant was found guilty. Evi-
dence that is not relevant is not admissible. N.C.R. Evid. 402. Fur-

ther, Rule 404 proscribes the admission of evidence of other wrongs or acts of a defendant to prove the character of the defendant in order to show that he acted in conformity therewith. Such evidence may be admissible for other purposes, including to show motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, entrapment, or accident. The challenged testimony in question is not admissible under the exceptions of Rule 404(b). Although the purposes for which evidence of other crimes, wrongs, or acts is admissible are not limited to those enumerated in the rule, we find that this testimony was not relevant to any fact or issue other than the character of the accused. *Cf. State v. Weaver*, 318 N.C. 400, 348 S.E. 2d 791 (1986) (evidence was admissible to show identity).

We find that *State v. Fowler*, 230 N.C. 470, 53 S.E. 2d 853 (1949), is instructive. In *Fowler*, the defendant was charged with murder and confessed to a sheriff, and in doing so added that he was an escapee from South Carolina, where he was serving a life sentence for murder. This Court held that the admission of the additional testimony about defendant being an escapee was reversible error because that testimony was not relevant to any material fact concerning the defendant's guilt and there is an inevitable tendency of such evidence to raise a legally spurious presumption of guilt in the minds of jurors. The principle enunciated in *Fowler* was followed by this Court in *State v. Lynch*, 279 N.C. 1, 181 S.E. 2d 561 (1971), and in *State v. Simpson*, 297 N.C. 399, 255 S.E. 2d 147 (1979).

In *Fowler* the erroneous testimony was tied in directly to the confession of the defendant, but here we have an intervening time of some thirty days between the challenged testimony and defendant's inculpatory statements to Thompson. The challenged testimony in no way was necessary to show the full context of defendant's confession, nor was it required in order to show any confidential relationship between defendant and Thompson. Thus we find this testimony to be irrelevant and immaterial to the later inculpatory statements made by defendant to Thompson.

The erroneous admission of the testimony of Thompson was compounded by the trial judge allowing Detective Watts to testify that Thompson told him about this statement by the defendant and that Detective Watts verified the fact that defendant was in

custody on the charge of assault with a deadly weapon with intent to kill his girlfriend, Sherry Keesler. The trial judge even permitted Detective Watts to testify that a handgun had been gathered and sent to the state laboratory on the Sherry Keesler charge. Thus this testimony of Detective Watts compounded the prejudice in this case by offering extrinsic evidence concerning the unrelated charge. *See State v. Stimpson,* 279 N.C. 716, 185 S.E. 2d 168 (1971) (defendant charged with murder, and using the defense of accident, was improperly impeached with evidence that he had been charged with murder in New York state); *State v. Williams,* 279 N.C. 663, 185 S.E. 2d 174 (1971) (new trial granted in an armed robbery case because defendant was impeached with evidence of armed robbery charges in other counties).

Here the challenged evidence was especially prejudicial because of its similarity to the charge at issue: murder and assault with a deadly weapon with intent to kill. When the similarity of the charges is compounded by the additional "verification" evidence of Detective Watts, we find the error to be prejudicial. The sole evidence in the case as to defendant's actually firing the lethal shots or inflicting lethal blows with the knife comes from the admission of his inculpatory statement. Further, although defendant did not testify, he produced evidence on his behalf. Gregory Weeks, assistant public defender, testified that he represented Thompson and that he was attempting to work out a plea bargain for him, but Thompson never mentioned that he had information on defendant that could be used in negotiating a plea arrangement. Further, although Thompson wrote to the authorities in August 1985 as to the inculpatory statements defendant had made to him, he did not inform the prosecutors that he would be willing to testify until 14 April 1986, the week the case came on for trial. Attorney Gerald Beaver testified that he later represented Thompson and negotiated the plea arrangement for his client. He testified that Thompson "wanted to get out of jail" and that Thompson understood that his testimony would secure his release in about three months. There was additional evidence that Gene Williford had been caught with a stolen weapon during the investigation of the murders but he had not been charged with these offenses.

We conclude that the admission of the testimony at issue over defendant's objections constituted prejudicial error and that the defendant is entitled to a new trial.

New trial.